United States District Court
Southern District of Texas
**ENTERED**
March 14, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| SHAWN MCMURRAY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. G-16-017 |
| | § | |
| CAROLYN W. COLVIN, Commissioner | § | |
| of the Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, are competing Motions for Summary Judgment filed by the parties. (Dkt. Nos. 12, 17). Having considered the motions, the administrative record[1] and applicable law, the Court concludes, for the reasons discussed herein, that McMurray's Motion be **DENIED**, that the Commissioner's Motion be **GRANTED**, and that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

On December 11, 2012, Plaintiff Shawn McMurray (McMurray) filed applications with the Social Security Administration (SSA), seeking disability insurance benefits (DIB) and supplemental security income (SSI). (Transcript (Tr.) 289-297, 312). In his application, McMurray alleged that his disability began on July 2, 2012, and was due to bipolar disorder, anxiety, depression, spleen injury and removal, chronic obstructive pulmonary disorder (COPD), post-traumatic stress disorder (PTSD), a punctured lung, and a broken rib on his left side. (Tr. 289-297, 312). McMurray's

---

[1] The administrative record was filed electronically. (Dkt. No. 10).

applications for DIB and SSI benefits were denied initially and on reconsideration. (Tr. 173-228). McMurray requested a hearing before an Administrative Law Judge's (ALJ).

On April 11, 2014, a hearing was held before ALJ Gary J. Suttles in Houston, Texas. (Tr. 127-172). During the hearing, the ALJ heard testimony from McMurray, who was represented by counsel, and from a vocational expert (VE). (Tr. 127-172). Thereafter, on June 26, 2014, the ALJ issued a decision in which he initially determined that McMurray met the insured status requirements of the Social Security Act through December 31, 2016, and that he had not engaged in substantial gainful activity since July 2, 2012, the alleged onset date. (Tr. 112). At Step 2 the ALJ found that McMurray had the following severe impairments: major depressive and personality disorder, anxiety and chronic obstructive pulmonary disease. (Tr. 113). At Step 3, the ALJ determined that McMurray did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 113). The ALJ then determined that McMurray had the residual functional capacity to perform light work, as defined in the regulations, except limited by the following:

> occasionally lifting and carrying 20 pounds and frequently 10 pounds. He can sit, stand and walk six of eight hours each for a full eight hour day. His push/pull and gross/fine dexterity is unlimited. He can occasionally climb stairs but no ladders, ropes or scaffolds. He cannot run. He can occasionally bend, stoop, crouch, crawl, balance, twist and squat. He can tolerate occasional exposure to dust, fumes, gases, chemicals and dangerous machinery. He gets along with others, understands simple instructions, concentrates and performs simple tasks, responds and adapts to workplace changes and supervision, but in an occasional public/employee contact setting.

(Tr. 115). At Step 4, the ALJ determined that McMurray was unable to perform his past relevant work. Finally, at Step 5, the ALJ determined that considering his age, education, work experience

and residual functional capacity,[2] there were jobs that exist in significant number in the national economy that McMurray could perform (*e.g.*, an electronics worker, a mail clerk, assembly press operator). (Tr. 118-119). As such, the ALJ concluded that McMurray was not disabled within the meaning of the SSA from July 2, 2012, through the date of the decision. (Tr. 119).

McMurray appealed the ALJ's decision to the Appeals Council of the SSA's Office of Hearings and Appeals, however, in a letter dated October 20, 2015, the Appeals Council notified McMurray that it declined to review the ALJ's determination (Tr. 1-7), which rendered the ALJ's opinion the final decision of the Commissioner. (Tr. 110-120). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). On January 20, 2016, McMurray filed the instant action seeking judicial review of the Commissioner's denial of his claims for DIB and SSI benefits. (Dkt. No. 1).

## II.  APPLICABLE LEGAL STANDARDS & BURDENS

### A.  Judicial Review

Judicial review of administrative decisions by the Commissioner is limited.[3] A federal court reviews the Commissioner's denial of benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 472, 473 (5th Cir. 1999); *see also*, *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir.1995) (a court is tasked with "scrutiniz[ing] the record to determine whether it contains substantial evidence to support the Commissioner's decision"). Substantial

---

[2] The ALJ noted that McMurray, who was born on May 28, 1971, was 41 years old; that McMurray had a high school education and was able to communicate in English; and that, given his work experience, transferability of job skills was not relevant. (Tr. 118).

[3] Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence.

evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). When reviewing an administrative decision, the court is not permitted to re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Instead, conflicts in the evidence are for the Commissioner, not the court, to resolve. *Brown*, 192 F.3d at 496.

### B. Standards and Burdens

To be eligible for disability insurance benefits (DIB) or supplemental security benefits (SSI) the claimant must have a disability as defined in the Act.[4] *See* 42 U.S.C. §§1382(a), 1382c(a)(3)(A)-(C);20 C.F.R. §1505. A well-established five-step sequential process is utilized by the Social Security Administration to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also*, *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *see also Leggett*, 67 F.3d at 563 n.2; *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).[5] The claimant has the burden to prove disability under the first four steps. *See Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that other substantial gainful employment is available in the national economy, which the claimant is capable

---

[4] An income cap also exists for SSI benefits, but that is not relevant in the case at hand.

[5] When a mental impairment is involved, as is the case here, additional procedures are utilized to evaluate the impairments. See 20 C.F.R. §§ 404.1520a, 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis).

of performing. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001).

## III. DISCUSSION

McMurray's challenge to the administrative decision is aimed at whether the ALJ properly weighed the opinions of the consultative examiner David L. Edwards, Ph.D. (Dkt. No. 17 at 4-13). The Commissioner maintains that the ALJ's decision comports with applicable law, that substantial evidence exists in the record to support the ALJ's decision, and that the decision should be affirmed. (Tr. 17).

As reflected in the records, Dr. Edwards is a psychologist who saw McMurray for a consultative examination on April 12, 2013. (Tr. 533-537). Following the consultation, Dr. Edwards issued a report which included his psychological assessment of McMurray. According to the report, using a multi-level axis,[6] Dr. Edwards set forth his diagnostic impressions of McMurray as follows:

> Axis I: Bipolar Disorder, not otherwise specified; Post-Traumatic Stress Disorder; Chronic Cognitive Disorder, not otherwise specified; Generalized Anxiety Disorder; and Panic Disorder with Agoraphobia.
>
> Axis II: None.
>
> Axis III: Status post motor vehicle accident with head injury, high blood pressure, COPD, stomach problems and chronic pain, defer to physician for final diagnosis

---

[6] Because mental disorders are often characterized by impairments in several areas, diagnosis requires a multi axial evaluation. Axis I refers to the individual's primary clinical disorders that will be the foci of treatment; Axis II refers to personality or developmental disorders; Axis III refers to general medical conditions; Axis IV refers to psychosocial and environmental problems; and Axis V refers to the clinician's assessment of an individual's level of functioning, often by using the GAF scale.

> Axis IV: Problems with social environment, occupational problems, financial problems, and other psychosocial/environmental stressors.
>
> Axis V: Global Assessment of Functioning (GAF)[7] = 38 severe symptoms (current).

(Tr. 537). In addition, Dr. Edwards opined that McMurray had a "poor" prognosis based on the severity of this physical and psychological symptoms and he further opined that McMurray would not be able to sustain full-time future employment. (Tr. 537).

McMurray initially argues that the ALJ failed to evaluate Dr. Edwards' opinion "*at all*," much less consistent with the regulations and Fifth Circuit precedent. (Dkt. No. 13). This argument lacks merit. The decision clearly reflects that the ALJ acknowledged the opinion of the consultative examiner when assessing McMurray's mental RFC for work. (Tr. 114, 116-117).

McMurray proceeds to argue that the "ALJ failed to provide *any* reasons for rejecting the opinion of Dr. Edwards, much less the 'good/specific/supported' reasons required by the regulations." (Dkt. No. 13). The Court finds no merit to this argument. The crux of Dr. Edwards's opinion was that McMurray would not be able to work. (Tr. 537).[8] An opinion that a claimant was "disabled" or "unable to work" carries no special significance because it involves a legal conclusion reserved for the Commissioner. *See Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (regardless of the opinions and diagnoses of medical sources, "sole responsibility for determining a claimant's

---

[7] The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." *See* AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV-TR) (4th ed. 2000) at 32. The GAF scale only takes into account psychological, social, and occupational functioning and does not include physical impairments. *Id*. Notably, the current DSM (*i.e.*, the DSM-5), which was released on or about May 18, 2013, made several changes, one of which was the discontinuation of the use of GAF scale scores as a diagnostic tool for assessing a patient's functioning. *See* AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-5) (5th ed. 2013).

[8] Notably, the record contains no evidence that Dr. Edwards completed a form assessment of McMurray's mental functioning as to each of the relevant functional abilities.

disability status" rests with the ALJ).

Notwithstanding, for the ALJ to give deference to a medical opinion, the opinion must be more than conclusional and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). "[T]he Commissioner is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez*, 64 F.3d at 176 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). In this case, after reviewing the medical and mental health records contained in the administrative record, it is evident that the ALJ decided not to credit Dr. Edwards' opinion because it was not consistent with the clinical and objective findings in his records, or the other evidence in the record. (*See* Tr. 338-343, 346, 349-350, 352, 356, 360, 394-395, 418, 420, 432-436, 438-447, 454-460, 470, 514-516, 524-525, 536, 576). Although McMurray takes issue with the evidence upon which the ALJ relied, it is well-established that an ALJ need not cite to each and every piece of evidence upon which he bases his decision. *Falco v. Shalala*, 27 F.3d 160,164 (5th Cir. 1994).

McMurray also argues that his low GAF score from Dr. Edwards conclusively established that he is unable to perform substantial gainful activity. The Court cannot agree. An individual's GAF scores are not determiners of an ability or inability to work. *See, e.g., Heinritz v. Barnhart*, No. 05-5208, 2006 WL 2294850, at *3 (10th Cir. Aug.10, 2006) (agreeing with a magistrate judge's finding that "GAF scores are not considered absolute determiners of disability"); *Andrade v. Astrue*, No. 4:11-CV-318-Y, 2012 WL 1106864, at *10 (N.D.Tex. Feb. 13, 2012), adopted in 2012 WL 1109476 (N.D.Tex. Apr. 2, 2012) (same); *Holmes v. Astrue*, 2009 WL 3190466, at *12 (S.D. Tex. Sept. 30, 2009) (same). Instead of viewing GAF scores as absolute determiners of the ability to

work, ALJs should review the evidence[9] and make disability determinations on a case-by-case basis, considering the entire record. *Jackson v. Colvin*, 2015 WL 7681262, at *3 (N.D. Tex. Nov. 5, 2015) report and recommendation adopted, 2015 WL 7582339 (N.D. Tex. Nov. 25, 2015) (citing *Petree v. Astrue*, 260 Fed.Appx. 33, 42 (10th Cir. 2007) ("a low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record."); *Holmes v. Astrue*, 2009 WL 3190466, at *12 (S.D. Tex. Sept. 30, 2009) (same). In this case, the ALJ properly considered McMurray's GAF scores,[10] along with the rest of the medical evidence, in reaching the determination that McMurray was not disabled. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (finding that the ALJ is responsible for determining a claimant's RFC).

Next, McMurray asserts that the ALJ improperly played doctor when he included his observations of McMurray at the hearing. (Tr. 117). Notably, the ALJ's observation that McMurray was "entirely responsive to my questioning with no mood disorder evident" and "at the hearing, [McMurray] described his responsibility for several household chores. (Tr. 117). However, what McMurray characterizes as the ALJ substituting his opinion is merely the ALJ interpreting his observations of McMurray's demeanor as being consistent with the medical evidence and the

---

[9] The SSA has published internal instructions regarding how to continue interpreting GAF scores that appear in medical records, noting that such scores should be treated as opinion evidence. (SSA Admin. Message 13066 ("AMC-13066) (effective July 22, 2013). Nevertheless, as with other opinion evidence, a medical opinion needs supporting evidence to be given much weight. 20 C.F.R. §§404.1527, 416.927; *see also*, 96-6p, 1996 WL 374180, at *1 (S.S.A. July 2, 1996). Moreover, even if well-supported, the medical opinion must not be inconsistent with the other substantial evidence in the record. 20 C.F.R. §§404.1527, 416.927.

[10] While Dr. Edwards assigned McMurray a GAF score of 38, the records contain GAF scores of 50. (Tr. 841, 858, 898, 944). To place the scores in context, a GAF score of 31 to 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood; a score of 41 to 50 suggests serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job);and a score of 51 to 60 suggests moderate symptoms or any moderate impairment in social, occupational, or school functioning. *See* DSM-IV-TR at 34.

opinions of his mental functioning as expressed by the non-treating doctors.[11] *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

Finally, after considering the administrative record in its entirety, the Court concludes that the ALJ's determination of McMurray's RFC for work properly incorporated (Tr. 47; 337-343) the limitations expressed by the consultative examiner into his determination of McMurray's RFC. *See Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990) (stating that ALJ has the responsibility to resolve conflicting medical opinions); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987) (stating that ALJ has the responsibility to resolve questions of credibility). The Court, therefore, finds no basis for remand.

## CONCLUSION

Considering the record as a whole, the Court concludes that proper legal standards were adhered to and the Commissioner's decision is supported by substantial evidence. Accordingly, it is the determination of the Court that the Plaintiff's Motion for Summary Judgment (Dkt. No. 13) is **DENIED**, that the Defendant's Motion for Summary Judgment (Dkt. No. 17) is **GRANTED**, and that this action is **DISMISSED** with prejudice.

**DONE** at Galveston, Texas, this _____14th_____ day of March, 2017.

_____
John R. Froeschner
United States Magistrate Judge

---

[11] Notably, any argument that ALJ improperly relied on the non-examining doctors because their opinion was not based on McMurray's mental health records finds no support in this case. (Tr. 173-185).